# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

WELLS FARGO BANK, N.A.,

    Plaintiff

v.

COMMONWEALTH LAND TITLE INSURANCE COMPANY,

    Defendant

Case No.: 2:18-cv-00494-APG-BNW

**Order (1) Denying Defendant's Motion to Dismiss, (2) Granting Defendant's Motion for Summary Judgment and (3) Denying Plaintiff's Motion for Partial Summary Judgment**

[ECF Nos. 42, 43, 52]

Plaintiff Wells Fargo Bank, N.A. was the beneficiary under a deed of trust encumbering property in Las Vegas, Nevada to secure a loan. The deed of trust was extinguished by a non-judicial foreclosure sale conducted by the homeowners' association (HOA) covering the property. Wells Fargo filed a claim under its title insurance policy with its insurer Commonwealth Land Title Insurance Company. Commonwealth denied the claim on the grounds that it was filed too late and the policy did not cover this type of title defect. Wells Fargo then sued Commonwealth, alleging breach of contract, contractual and tortious breaches of the implied covenant of good faith and fair dealing, and breach of fiduciary duties. Both parties move for summary judgment, and Commonwealth also moves to dismiss Wells Fargo's first amended complaint for lack of subject matter jurisdiction.

**I.    BACKGROUND**

In November 2006, Yanee Survivong and Bindit Songsunguen borrowed $299,296 from Mylor Financial to purchase a home at 107 Manor House Avenue, Las Vegas, Nevada 89123.[1] The loan was secured by a deed of trust recorded against the property, which identified Mylor as

---

[1] *See* ECF No. 42-2.

the lender and Mortgage Electronic Registration Systems, Inc. (MERS) as beneficiary acting solely as a nominee for Mylor and its successors and assigns.[2] The deed of trust was insured by a title insurance policy issued by Commonwealth.[3] Mylor later assigned its interest in the loan to Wells Fargo, in its capacity as "Trustee for Structured Asset Mortgage Investments II Inc. Bear Stearns Mortgage Funding Trust 2007-AR1, Mortgage Pass-Through Certificates, Series 2007-AR1."[4]

The property is part of the Spinnaker Homes at Stone Haven Commons HOA.[5] The borrowers fell into arrears on their HOA assessments and the HOA recorded a notice of delinquent assessment and a notice of default and election to sell in 2009.[6] Two years later, the HOA recorded a notice of trustee's sale.[7] The property was then sold to Spinnaker at a non-judicial foreclosure sale.[8] Spinnaker transferred its interest in the property to LVDG, LLC by a quitclaim deed, which LVDG claims gives it an interest in the property superior to Wells Fargo's deed of trust.[9] In 2013, Wells Fargo sued the borrowers and LVDG in Nevada state court,[10] and LVDG counterclaimed, asserting that its interest in the property was superior to Wells Fargo's

---

[2] *Id.*
[3] ECF No. 42-19. The parties do not dispute that Wells Fargo, as Mylor's assignee, is covered by this policy.
[4] ECF No. 42-3 at 2.
[5] ECF No. 42-2 at 17.
[6] ECF Nos. 42-5, 42-6.
[7] ECF No. 42-7.
[8] ECF No. 42-8.
[9] ECF No. 42-9.
[10] ECF No. 42-10.

2

and that Wells Fargo's deed of trust was extinguished by the HOA sale.[11] That litigation was ongoing at the time Wells Fargo filed its complaint in this case.

In early 2014, Wells Fargo informed Commonwealth in writing that LVDG was claiming a superior interest in the property and requested that Commonwealth indemnify Wells Fargo in the state-court litigation.[12] Commonwealth denied the claim because it did not fall within the scope of the policy.[13] Nearly a year later, Wells Fargo requested that Commonwealth reconsider its denial of coverage.[14] Commonwealth refused, citing the same reasons as before.[15]

Wells Fargo sued Commonwealth for breach of contract, contractual and tortious breaches of the implied covenant of good faith and fair dealing, and breach of fiduciary duties. It moves for partial summary judgment on its claims for breach of contract, tortious breach of the implied covenant, and breach of fiduciary duties. Commonwealth moves for summary judgment on all claims. While the motions for summary judgment were pending, Commonwealth filed an additional motion to dismiss Wells Fargo's first amended complaint, arguing that this court lacks subject matter jurisdiction because the amount in controversy is below the jurisdictional minimum.

/ / / /

/ / / /

/ / / /

---

[11] ECF No. 42-11 at 15.

[12] ECF No. 42-12. The parties dispute whether this letter was actually on Wells Fargo's behalf because it references Wells Fargo's policy number while also mentioning U.S. Bank's interest in the property throughout the body of the letter.

[13] ECF No. 42-13.

[14] ECF No. 42-14.

[15] ECF No. 42-15.

3

## II. ANALYSIS

### A. Commonwealth's Motion to Dismiss

"Federal district courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . ."[16] The court cannot reach the merits of any case until it confirms its own subject matter jurisdiction.[17]

Wells Fargo asserts the court's diversity jurisdiction, which permits state-law claims in federal court if the value of the claim exceeds $75,000 and the parties are citizens of different states.[18] When a plaintiff originally files the suit in federal court, the amount in controversy is determined from the face of the complaint as long as the sum claimed is made in good faith.[19] Dismissal is justified only where it appears to a legal certainty that the claim is for less than the jurisdictional amount.[20]

Commonwealth argues that Wells Fargo could not claim damages in excess of $75,000 at the time it filed its complaint because at that time it had not suffered an indemnifiable loss under the insurance policy.[21] Wells Fargo does not oppose this assertion in its response. As a result, Wells Fargo must rely on its claim for litigation expenses incurred in defending its interest in the property to meet the jurisdictional minimum.

Commonwealth argues that Wells Fargo fails to meet the jurisdictional minimum because it had accrued only $19,792.50 in attorneys' fees in the state-court action at the time it filed its

---

[16] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

[17] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94 (1998).

[18] *See* 28 U.S.C. § 1332.

[19] *Crum v. Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000) (citing *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 363 (9th Cir. 1986)).

[20] *Id.*

[21] ECF No. 52 at 6.

4

complaint in this case.[22]  However, Wells Fargo asserted in its complaint that its defense of its interest in the property was ongoing.[23]  Wells Fargo's theory of recovery has always been that Commonwealth breached the insurance policy by refusing to defend Wells Fargo in the state-court litigation.[24]  It argues that the amount in controversy in this case is the damages it has continued to sustain because of Commonwealth's breach of the policy.[25]

Commonwealth argues that I cannot consider attorneys' fees Wells Fargo had not yet incurred because the amount in controversy is determined as of the date the complaint is filed.[26]  But that "does not mean that the mere futurity of certain classes of damages precludes them from being part of the amount in controversy."[27]  In *Chavez v. JPMorgan Chase & Co.*, the plaintiff sought past and future lost wages as the result of a wrongful termination.[28]  The defendant removed the case to federal court and successfully moved for summary judgment.[29]  On appeal, the plaintiff argued that the federal court lacked subject matter jurisdiction because the amount in controversy at the time of removal, which she argued was limited to her lost wages before removal, was less than $75,000.[30]  The Ninth Circuit clarified that "the amount in controversy is

---

[22] *Id.* at 5–6.

[23] ECF No. 16 at 4, ¶ 19.

[24] *Id.* at 6, ¶¶ 24, 26–29.

[25] ECF No. 54 at 4.

[26] ECF No. 55 at 8.

[27] *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) (citing *Steel v. United States*, 813 F.2d 1545, 1547 (9th Cir. 1987) (noting that "past and future pension payments" exceeded the amount-in-controversy requirement); *Broglie v. MacKay-Smith*, 541 F.2d 453, 455 (4th Cir. 1976) ("[A] plaintiff may properly include as part of the amount in controversy costs which will not be incurred until after the suit is ended.")).

[28] *Id.* at 415.

[29] *Id.*

[30] *Id.*

5

not limited to damages incurred prior to removal," but rather "encompasses all relief a court may grant" if the plaintiff's claims are successful.[31] "The amount in controversy is what is at stake in the litigation" at the time of filing, and when a plaintiff's complaint claims future losses, those losses can be included in the amount in controversy.[32]

While Wells Fargo's claim is different from the one at issue in *Chavez*, its complaint presents similar amount-in-controversy issues. The complaint asserts continued losses resulting from the alleged breach of contract, including ongoing litigation expenses incurred to defend Wells Fargo's interest in the property. These allegations and prayer for relief place the future litigation expenses at stake at the time of the complaint and allow me to consider them in calculating the amount in controversy.

Commonwealth has therefore not shown that it is a legal certainty that Wells Fargo cannot reach the jurisdictional minimum to establish diversity jurisdiction. I therefore deny Commonwealth's motion to dismiss for lack of subject matter jurisdiction.

**B. Motions for Summary Judgment and Partial Summary Judgment**

Summary judgment is appropriate when the pleadings and evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[33] When considering summary judgment, I view all facts and draws all inferences in the light most favorable to the nonmoving party.[34] If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when

---

[31] *Id.* at 414–15.

[32] *Id.* at 418.

[33] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[34] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

6

the facts are undisputed.[35] If the moving party demonstrates the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[36] "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."[37] "When simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of"—and against—"both motions before ruling on each of them."[38]

### 1. Breach of Contract

Wells Fargo alleges that Commonwealth denied its claim in violation of the policy. Both parties move for summary judgment on this claim. Commonwealth argues that Wells Fargo did not promptly tender its claim and that when the claim was tendered it was unclear whether it was on Wells Fargo's behalf. Commonwealth also argues that the claim is not covered under the policy, so denying the claim was not a breach of contract. I need not address the issues regarding tender of the claim because the claim is not covered under the policy.

The policy specifically excludes from coverage any losses arising because of "[d]efects, liens, encumbrances, adverse claims or other matters . . . attaching or created subsequent to" the date of the policy, November 29, 2006.[39] Also, Schedule B contains 17 exceptions from coverage. Exception 17 states that the policy "does not insure against loss or damage . . . which

---

[35] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[36] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[37] *Sonner v. Schwabe North American, Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

[38] *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (citing *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two,* 249 F.3d 1132, 1134 (9th Cir. 2001)).

[39] ECF No. 43-2 at 2 (emphasis omitted).

7

arise by reason of" the CC&Rs; it also states: "Said covenants, conditions and restrictions provide that a violation thereof shall not defeat the lien of any . . . Deed of Trust . . . ."[40]

Commonwealth argues that Wells Fargo's claim is excluded under exception 17 because the claim arose as a result of an HOA lien provided for in the CC&Rs. Wells Fargo responds that even if that is correct, two endorsements to the policy bring the claim back within coverage. Endorsement 100 paragraph 1(a) provides for coverage

> against loss which the insured shall sustain by reason of . . . [a]ny incorrectness in the assurance which the Company hereby gives: . . . [t]hat there are no covenants, conditions, or restrictions under which the lien of the mortgage referred to in Schedule A can be cut off, subordinated, or otherwise impaired.[41]

Wells Fargo argues this applies because Commonwealth, in exception 17, assured that a violation of the CC&Rs would not defeat Wells Fargo's deed of trust. Wells Fargo also relies on endorsement 115.2, which provides coverage for "loss or damage sustained by reason of . . . [t]he priority of any lien for charges and assessments at Date of Policy in favor of any [HOA] which are provided for in" the CC&Rs.[42] Wells Fargo argues that, under Nevada law, the HOA lien was perfected as of the date of the recording of the CC&Rs, so the HOA lien existed as of the date of the policy even though no amount was owing at that time.

Wells Fargo's claim is excluded under exception 17, and the endorsements do not revive it. Contrary to Wells Fargo's argument, exception 17 is not an assurance that the CC&Rs cannot subordinate or cut off Wells Fargo's deed of trust. Rather, Commonwealth merely summarized what the CC&Rs said: that the CC&Rs contain a provision that an HOA assessment lien would

---

[40] *Id.* at 8, 10.

[41] *Id.* at 13.

[42] *Id.* at 16.

8

not negatively affect Wells Fargo's deed of trust. While that statement in the CC&Rs may have been incorrect as a matter of law, the HOA's lien extinguished the deed of trust as a function of Nevada law and not of the CC&Rs themselves. Commonwealth gave no assurance that the statement in the CC&Rs was correct, it merely gave notice of what the CC&Rs said. Thus, endorsement 100 does not bring this claim back into the policy's coverage.

Wells Fargo's reliance on endorsement 115.2 is similarly misplaced because there was no HOA lien at the date of the policy; it arose later.[43] Under Nevada Revised Statutes § 116.3116(9), the HOA lien was perfected automatically as of the date of the CC&Rs' recording. But no lien existed until the amount became due later. So, there was no HOA assessment lien as of the date of the policy and endorsement 115.2 does not provide coverage for Wells Fargo's claim.

Because Wells Fargo's claim was not covered by the policy, Commonwealth did not breach the contract when it denied coverage. I therefore grant summary judgment in Commonwealth's favor on this claim.

### 2. Breach of Implied Covenant of Good Faith and Fair Dealing

Under Nevada law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution."[44] "The implied covenants of good faith and fair

---

[43] Nev. Rev. Stat. § 116.3116(1) ("The association has a lien . . . from the time the construction penalty, assessment or fine becomes due.").

[44] *A.C. Shaw Constr. v. Washoe Cnty.*, 784 P.2d 9, 9 (Nev. 1989) (quoting Restatement (Second) of Contracts § 205); *see also Nelson v. Heer*, 163 P.3d 420, 427 (Nev. 2007) ("It is well established that all contracts impose upon the parties an implied covenant of good faith and fair dealing, which prohibits arbitrary or unfair actions by one party that work to the disadvantage of the other.").

9

dealing impose a burden that requires each party to a contract to refrain from doing anything to injure the right of the other to receive the benefits of the agreement."[45]

To establish a claim for breach of the implied covenant, a plaintiff must prove: (1) the existence of a contract between the parties; (2) that the defendant breached its duty of good faith and fair dealing by acting in a manner unfaithful to the purpose of the contract; and (3) the plaintiff's justified expectations under the contract were denied.[46] Generally, the remedy for a breach of the implied covenant is limited to contractual remedies, but in limited circumstances a breach can give rise to tort liability.[47]

In counts two and three, Wells Fargo alleges both contractual and tortious breaches of the implied covenant based on Commonwealth's denial of coverage. Wells Fargo moves for summary judgment only on its claim for tortious breach, while Commonwealth moves for summary judgment on both claims.

### a. Contractual Breach of the Implied Covenant

A breach of the implied covenant of good faith and fair dealing occurs "[w]here the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract."[48] This cause of action is different from one for breach of contract because it requires literal compliance with the terms of the contract.[49] "It is well

---

[45] *Shaw v. CitiMortgage, Inc.*, 201 F. Supp. 3d 1222, 1251 (D. Nev. 2016) (quotation omitted).

[46] *See Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995) (citing *Hilton Hotels Corp. v. Butch Lewis Prod., Inc.*, 808 P.2d 919, 922–23 (Nev. 1991)).

[47] *See, e.g., State v. Sutton*, 103 P.3d 8, 19 (Nev. 2004) (holding that in special circumstances, a breach of the implied covenant of good faith and fair dealing can give rise to tort liability).

[48] *Hilton Hotels*, 808 P.2d at 922–23.

[49] *See Kennedy v. Carriage Cemetery Servs., Inc.*, 727 F. Supp. 2d 925, 931 (D. Nev. 2010).

10

established that a claim alleging breach of the implied covenants of good faith and fair dealing cannot be based on the same conduct establishing a separately pled breach of contract claim."[50]

Wells Fargo alleges that "Commonwealth's refusal to comply with its contractual obligations" under the policy "is without any reasonable basis in fact or law."[51] Its argument in support this claim is based only on its allegations that Commonwealth breached the contract unreasonably. But Wells Fargo requested coverage for a claim that is not covered, and denying coverage was neither a breach of the contract nor compliance that countervenes the intention or spirit of the contract. I therefore grant summary judgment in Commonwealth's favor on this claim.

### b. Tortious Breach of the Implied Covenant

Under Nevada law, breach of the implied covenant can give rise to tort liability when a special relationship exists between the parties to the contract, such as the relationship between an insurer and an insured.[52] "An insurer breaches the duty of good faith when it refuses 'without proper cause to compensate its insured for a loss covered by the policy.'"[53] To constitute a denial "without proper cause," an insurer must have an "actual or implied awareness of the absence of a reasonable basis for denying benefits of the policy."[54] In other words, an insurer's

---

[50] *Shaw*, 201 F. Supp. 3d at 1252 (holding that defendant's conduct that was a "direct and actual breach" of the subject contract could not support the plaintiff's implied-covenant claim).

[51] ECF No. 16 at 7, ¶ 35.

[52] *Ins. Co. of the West v. Gibson Title Co., Inc.*, 134 P.3d 698, 702 (Nev. 2006).

[53] *Pioneer Chlor Alkali Co., Inc. v. Nat'l Union Fire Ins. Co.*, 863 F. Supp. 1237, 1242 (D. Nev. 1994) (quoting *United States Fid. & Guar. Co. v. Peterson*, 540 P.2d 1070, 1071 (Nev. 1975)).

[54] *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1354 (Nev. 1986).

incorrect determination that coverage does not exist under a particular policy is not an actional tort unless there was no reasonable basis for that determination.[55]

Commonwealth had a reasonable basis to deny coverage because Well Fargo's claim was not covered by the policy, as discussed above. Because Wells Fargo has not shown that the denial of coverage lacked a reasonable basis, I grant summary judgment in Commonwealth's favor on this claim.

### 3. Breach of Fiduciary Duties

Wells Fargo's last cause of action—breach of fiduciary duty—is also based on Commonwealth's denial of coverage. Nevada recognizes that a "special relationship" exists between an insurer and its insured, and that "an insurer's duty to its policyholder is . . . 'akin' to a fiduciary relationship."[56] Nonetheless, the Supreme Court of Nevada in *Powers v. U.S. Auto Association* declined to "adopt[] a new cause of action" for breach of fiduciary duty in the insurance context and instead "merely reconiz[ed] that breach of the fiduciary nature of the insurer-insured relationship is part of the duty of good faith and fair dealing."[57] Both factually and legally, Wells Fargo's claim for breach of fiduciary duties therefore fails as a matter of law. I therefore grant summary judgment in Commonwealth's favor on this claim.

## III. CONCLUSION

IT IS THEREFORE ORDERED that Commonwealth's motion to dismiss **[ECF No. 52] is DENIED as moot.**

---

[55] *Pioneer*, 863 F. Supp at 1242.

[56] *Powers v. U.S. Auto Ass'n*, 962 P. 2d 596, 602 (1998).

[57] *Id.* at 603.

12

IT IS FURTHER ORDERED that Wells Fargo's motion for partial summary judgment **[ECF No. 42] is DENIED** and Commonwealth's motion for summary judgment **[ECF No. 43] is GRANTED**. The clerk of the court is directed to enter judgment in favor of Commonwealth and close this file.

DATED this 9th day of May, 2019.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE